UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

IN RE:    TANIA E. FRENCH,                      Case No. 06-20066

                    Debtor.                     Chapter 13

**ORDER DENYING DEBTOR'S MOTION FOR CONFIRMATION
OF CHAPTER 13 PLAN**

The trustee has delayed the meeting of creditors and the recommendation regarding confirmation in this matter because the debtor has not yet filed her 2005 tax returns as required by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The debtor demands confirmation, arguing that section 1308 of BAPCPA does not require her to provide a return whose filing deadline has not yet arrived. The Court finds that the trustee's interpretation of § 1308 is the correct one, and denies the debtor's motion demanding confirmation.

Factual Background

The debtor filed for Chapter 13 protection on January 9, 2006. This means that her matter is governed by the recently-enacted BAPCPA amendments. As practitioners and parties are becoming aware, BAPCPA has changed consumer bankruptcy practice in many respects. The debtor and her counsel, however, clearly were prepared for the changes. The debtor obtained the necessary credit briefing required by § 109 of BAPCPA. She moved for continuation of the "semi-automatic" stay pursuant to § 362(c)(3), and that motion was granted. She has, since January

1

25, 2006, had payroll deductions taken from her check for her plan payments. It appears that, to date, the debtor is successfully working her way through the Chapter 13 proceeding.

At some point, however, the trustee notified the debtor that the meeting of creditors would be re-scheduled to a later date (currently it is scheduled for March 30, 2006) to allow the debtor to file her 2005 tax return. The trustee based this decision on § 1308 of BAPCPA, a new provision that did not exist under the old Bankruptcy Code. Section 1308(a) states that "[n]ot later than the day before the date on which the meeting of the creditors is first scheduled to be held under section 341(a), if the debtor was required to file a tax return under applicable nonbankruptcy law, the debtor shall file with appropriate tax authorities all tax returns for all taxable periods ending during the 4-year period ending on the date of the filing of the petition." The provision goes on to state that if the relevant tax returns haven't been filed by the day before the § 341 meeting, the trustee "may" hold open the meeting for "a reasonable period of time" to allow the debtor to file the returns.

The debtor disagreed. She argued that, under 26 U.S.C. § 6072(a) of the tax code, the deadline for her to file her 2005 return would not occur until April 15, and therefore, "applicable nonbankruptcy law" did not "require" her to file a return. Lacking any other means of putting this issue before the Court for adjudication, the debtor took the unusual and creative step of moving the Court for an order of

2

confirmation, in spite of the fact that no meeting of creditors has yet been held and the trustee has not yet recommended confirmation.

The Court held a hearing on the motion to confirm on March 7, 2006, and heard thorough argument from both the debtor and the trustee. The Court withheld ruling to further consider the issue.

Discussion

As indicated above, in resolving this issue, the parties and the Court must interpret a new statute, section 1308 of BAPCPA. To date, no court has opined on this new requirement that debtors submit tax returns. While one bankruptcy court has had occasion to refer to § 1308, it did so only in a footnote in which it found that the debtor's matter was not governed by BAPCPA. *See* In re: Goodell, 2006 WL 23568 (Bankr. E.D. Pa., Jan. 4, 2006). The issue raised by the debtor, therefore, appears to be one of first impression.

    A.    *Legislative History*

The scattered legislative history of BAPCPA seems to indicate that, from the beginning of BAPCPA's long journey to enactment, Congress intended to require debtors to file their tax returns as a condition of confirmation. The provision went through some changes over the years–at various points, Congress considered making debtors provide anywhere from three to six years' worth of tax returns. At one point, it appears that Congress intended to include in § 1308 a provision that if the debtor failed to file the required tax returns, the Court could dismiss or convert

3

the case. That provision ended up being added to § 1307 instead.

The legislative history sheds a bit of light on why Congress thought it important to demand that debtors file returns. First, it appears that Congress wanted to help state revenue agencies figure out whether they had claims against the debtor. In the March 18, 2003 report from the House Judiciary Committee, one finds the following statement: "Tax return filing. A number of provisions in the bill would require debtors to have filed tax returns before a bankruptcy case may continue. Those provisions would help states identify potential claims in bankruptcy cases where they may be owed delinquent taxes." H.R. 108-40 (Part 1), March 18, 2003.

It also appears that Congress wanted to punish those debtors who were delinquent in filing tax returns, by withholding confirmation until they did so. The following comes from the April 8, 2005 House Judiciary Report, which is dated a mere two weeks prior to the passage of BAPCPA:

> § 716: Requirement to File Tax Returns to Confirm Chapter 13 Plans. Under current law, a debtor may enjoy the benefits of chapter 13 even if delinquent in the filing of tax returns. Section 716 of the Act responds to this problem. Subsection (a) amends section 1325(a) of the Bankruptcy Code to require a chapter 13 debtor to file all applicable Federal, state and local tax returns as a condition of confirmation as required by section 1308 (as added by section 716(b)). Section 716(b) adds section 1308 to chapter 13 to require a chapter 13 debtor to be current on the filing of tax returns for the four-year period preceding the filing of the case. If the returns are not filed by the date on which the meeting of creditors is first scheduled, the trustee may hold open that meeting for a reasonable period of time to allow the debtor to file any unfiled returns.

4

H.R. 109-31 (Pt. 1), April 8, 2005.

   B.   *Statutory Construction*

The first step in analyzing the debtor's is to look at the statutory language. Both the Supreme Court and the Seventh Circuit have stated repeatedly that "when the plain language of a statute is clear, courts need look no farther than those words in interpreting the statute." Gildon v. Bowen, 384 F.3d 883, 886 (7th Cir. 2004), *quoting* Estate of Cowser v. Comm'r of Internal Revenue, 736 F.2d 1168, 1171 (7th Cir. 1984). *See also*, Cler v. Illinois Education Association, 423 F.3d 726, 730 (7th Cir. 2005); United States v. Castillo, 406 F.3d 806, 814 (7th Cir. 2005) (indicating that looking to a statute's "natural meaning" is "the starting point of all inquiries into statutory construction"); United States v. Jones, 372 F.3d 910, 912 (7th Cir. 2004). In other words, as the Supreme Court puts it, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Connecticut National Bank v. Germain, 503 U.S. 249, 253-54 (1992) (citations omitted).

In the interestingly-titled United States v. Miscellaneous Firearms, Explosives, Destructive Devices and Ammunition, 376 F.3d 709, 712 (7th Cir. 2004), *cert. denied sub nom.*, Fleischli v. United States, ___ U.S. ___, 125 S.Ct. 1999 (2005), the Seventh Circuit, Judge Evans writing, expounded on this principle as follows:

> The cardinal rule of statutory interpretation is that courts "must first look to the language of the statute and assume that its plain meaning accurately expresses the legislative purpose." *Grzan v. Charter Hosp. of Northwest Ind.*, 104 F.3d 116, 122 (7th Cir. 1997)

5

(internal quotation and citation omitted). In determining whether the meaning of statutory language is plain or ambiguous, we look to the specific language at issue, the context in which the language is used, and the broader context of the statute as a whole. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). We will not construe a statute in a way that makes words or phrases meaningless, redundant, or superfluous. *Welsh v. Boy Scouts of America*, 993 F.2d 1267, 1272 (7th Cir. 1993).

Armed with this clear directive, the Court first looks at the language of § 1308. If the Court finds that language clear and unambiguous–by looking at the language at issue, the context in which it is used, and the context of the statute–then there is nothing left for the Court to do but "enforce it according to its terms." Greenfield Mills, Inc. v. Macklin, 361 F.3d 934, 954 (7th Cir. 2004), *quoting* United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989).

C. *Review of the Language of § 1308*

Subsection (a) of § 1308 reads as follows:

> Not later than the day before the date on which the meeting of the creditors is first scheduled to be held under section 341(a), if the debtor was required to file a tax return under applicable nonbankruptcy law, the debtor shall file with appropriate tax authorities all tax returns for all taxable periods ending during the 4-year period ending on the date of the filing of the petition.

When the Court–and apparently, the trustee–first read this provision, the above language seemed quite clear. By the day before the date the meeting of creditors was first scheduled, a debtor had to file tax returns for each of the four years prior to the year in which he or she filed for bankruptcy if the tax code or other law required such returns to be filed. Thus, if a debtor filed for bankruptcy on

6

January 1, 2006, and the law had required that he or she file tax returns for 2002, 2003, 2004 and 2005, then the debtor had to make sure that he or she had filed tax returns for those four years by the day before the first date scheduled for the 341 meeting.

The debtor in this case, however, takes issue with the meaning of the phrase *"if the debtor was required to file a tax return under applicable nonbankruptcy law."* She argues that in her case, applicable non-bankruptcy law does not require her to file a tax return. She reasons that on the day before the date first scheduled for her meeting of creditors–February 8, 2006–applicable non-bankruptcy law did not require her to file her 2005 tax return, because 26 U.S.C. § 6072 holds that, when a return is required under 26 U.S.C. §§ 6012, 6013, 6017 or 6031, it must be filed "on or before the 15th day of April following the close of the calendar year . . . ." The debtor argues that, because applicable non-bankruptcy law gave her until April 15, 2006 to file her 2005 tax return, she was not–as of February 8, 2006–"required to file a tax return under applicable nonbankruptcy law."

The Court finds this reading of the relevant phrase strained for a number of reasons. First, had Congress wished for § 1308 to have the meaning the debtor gives it, it might have said, "if the debtor was required to file a tax return *by that date* by applicable nonbankruptcy law." That is the meaning the debtor asks the Court to read into § 1308, in spite of the fact that Congress did not draft the statute that way.

7

Second, section 1308 focuses on the question of whether applicable nonbankruptcy law requires the debtor to file a return *at all*, not on when the applicable nonbankruptcy law requirement must be met. Under 26 U.S.C. § 6012 of the tax code, a debtor who did not earn taxable gross income equal to or in excess of the exemption amount is not required to file a tax return. Neither is a debtor who is a surviving spouse and had gross taxable income less than the sum of the exemption plus the basic standard deduction. Under 26 U.S.C. § 6017 of the tax code, a self-employed person who makes less than $400 a taxable year from that self-employment isn't required to file a return. None of these debtors would be "required to file a tax return under applicable nonbankruptcy law," and therefore would not have to file returns under § 1308.

In contrast, Schedule I of this debtor's Chapter 13 petition reflects a take-home income of $2,380.67 a month from her job in the health care industry–approximately $28,500 per year–indicating that applicable non-bankruptcy law likely requires her to file a tax return. Indeed, the debtor does not argue that she is completely exempt from having to file a tax return for 2005–only that she isn't required to do it *yet*. Section 1308 does not speak of debtors who aren't required to file *yet*, only of debtors who are required to file at all.

Third, a review of subsection (b) of § 1308 makes the debtor's construction of subsection (a) more puzzling. Subsection (b)(1) gives the trustee the ability to continue the § 341 meeting to give a debtor time to meet the filing requirement in

8

subsection (a). It states as follows:

> Subject to paragraph (2), if the tax returns required by subsection (a) have not been filed by the date on which the meeting of creditors is first schedule to be held under section 341(a), the trustee may hold open that meeting for a reasonable period of time to allow the debtor an additional period of time to file any unfiled returns, but such additional period of time shall not extend beyond–
>
> > (A) for any return that is past due as of the date of the filing of the petition, the date that is 120 days after the date of that meeting; or
> >
> > (B) for any return that is not past due as of the date of the filing of the petition, the later of–
> >
> > > (i) the date that is 120 days after the date of that meeting; or
> > >
> > > (ii) the date on which the return is due under the last automatic extension of time for filing that return to which the debtor is entitled, and for which request is timely made, in accordance with applicable nonbankruptcy law.

Thus, Congress gives the debtor who has not filed tax returns for one of the four preceding years the opportunity to get those returns filed. If the returns are delinquent, the debtor gets 120 days, or four months, from the date first scheduled for the meeting of creditors to remedy the delinquency. If the returns *aren't* delinquent–exactly the situation the current debtor faces–the debtor may have either four months from the date first scheduled for the meeting of creditors *or* the date the return is due under the last correctly-applied-for automatic extension, whichever is later.

When one reads § 1308(b)(1)(B)–dealing with not-yet-delinquent returns–in

9

conjunction with § 1308(a), it becomes clear that Congress intended to make the filing of tax returns a condition of confirmation. For those debtors who file for Chapter 13 protection between January 1 and April 15 of any given year, Congress intended to require them to have their return for the prior year filed by the date first scheduled for the meeting of creditors, *even if* the return is not yet delinquent under the tax code. Apparently realizing, however, that it is a rare human who has his or her 2005 tax return completed and in to the taxing authorities as of January 1, 2006, Congress allowed the trustee to hold the meeting of creditors open for a sufficient amount of time to allow a well-intentioned debtor to file the previous year's return.

To interpret the phrase "if the debtor was required to file a tax return under applicable bankruptcy law" in the way the debtor requests would be to render subsection 1308(b)(1)(B) meaningless. If "required to file a tax return under applicable bankruptcy law" means "if required *by the date first set for the § 341 meeting* to file a tax return under applicable nonbankruptcy law," then there is no reason to give a debtor who hasn't filed a non-delinquent return additional time to do so. And as the Seventh Circuit has firmly held, courts cannot "construe a statute in a way that makes words or phrases meaningless, redundant, or superfluous." United States v. Miscellaneous Firearms, et al., 376 F.3d 709, 712 (7th Cir. 2004) (citation omitted).

Further, enforcing the plain meaning of § 1308 does not "produce a result

demonstrably at odds with the intention of its drafters." Greenfield Mills, Inc. v. Macklin, 361 F.3d 934, 954 (7th Cir. 2004) (citation omitted). While it is often difficult to discern the drafters' intent when looking at a piece of legislation, there are a few snippets of information one can collect regarding BAPCPA. First, as indicated above in the discussion of the legislative history, Congress appears to have wanted to make sure tax returns were filed in order to assist state taxing authorities in determining whether they had claims for delinquent taxes. Second, Congress wanted to create a strong incentive for debtors who had delinquent tax returns to get them filed.

Admittedly, both of those stated intentions appear to be directed at debtors who are *delinquent* in filing tax returns, not to debtors whose reason for not filing by the date specified in § 1308 is because the tax code deadline has not yet arrived. But the enforcement mechanism that Congress created in § 1308 is a requirement that the returns be filed–*regardless of whether they are yet due*–in order to obtain confirmation. In other words, Congress bumped up the deadline for filing tax returns for those debtors who file petitions between January 1 and April 15 of a given year.

One might argue that this is harsh treatment for those debtors who are not, and haven't been, delinquent in filing their tax returns, and have the misfortune to find themselves needing to file petitions in the first 3½ months of the year. But BAPCPA contains a number of provisions which some might consider harsh–the

11

provision in § 521(i) that requires that a debtor's petition be "automatically" dismissed if certain information has not been filed within 45 days of the filing of the petition, the provision in § 109(h) that one cannot even be a debtor if one does not obtain a pre-petition credit briefing, the provisions in § 362 that truncate or abolish the automatic stay for debtors who've had cases dismissed in the prior year. Clearly, then, a provision that creates a result some might view as harsh does not appear to be at odds with the intention of the drafters.

Further, the apparent harshness of bumping up the deadline for filing one's tax returns for creditors who file bankruptcy early in the year is softened by subsection (b)(1)(B), which lets the debtor have until April 15–and beyond, if she appropriately seeks an extension–to file the previous year's returns. True, if the debtor takes that long to file, he or she will likely delay confirmation of their Chapter 13 plans. But that delay is limited. The debtor can control the delay by getting the return filed as soon as possible, and definitely by the April 15 tax code deadline.

At the hearing on this matter, the Court inquired of the debtor's counsel what the damage would be in holding off confirmation. Counsel responded that until the plan was confirmed, it could not begin to operate to pay back the creditors as proposed. Certainly it is true that expeditious confirmation of acceptable plans is the goal in reorganization cases. But this does not mean that speed of confirmation trumps making every effort to see that the plan has a likelihood of succeeding. As

Case 06-20066-pp    Doc 26    Filed 03/21/06    Page 12 of 14

the trustee pointed out at the hearing on this matter, seeing the 2005 tax return will assist him in determining the feasibility of the plan. And while the debtor is no doubt anxious to have her plan confirmed (as, quite likely, are the creditors), this is an individual reorganization. The debtor does not have a business which is languishing for lack of the ability to implement a reorganization. And the delay in confirmation will be relatively short–the debtor indicated at the hearing that she planned to have the 2005 return filed by April 15, 2006, approximately one month from the writing of this decision.

Finally, the Court notes that the debtor is asking this Court to order confirmation of a plan when there has been no meeting of creditors, and when the debtor has not complied with what the Court concludes is the clear requirement of § 1308. There are circumstances in which a court will order confirmation over the objection of parties, but that action is not appropriate in a case such as this one.

Conclusion

The Court concludes that the meaning of § 1308 of BAPCPA is clear–the debtor must have filed her 2005 tax return by the day before the date first scheduled for the meeting of creditors in order to obtain confirmation. The trustee may hold that meeting open until 120 days after that first meeting date or the date the return is due under the last appropriately-applied-for extension of time, whichever is later. In this case, the trustee has agreed to hold open the meeting, and the debtor has indicated that she plans to timely file her return. For those

13

reasons, it is not appropriate to force confirmation.

WHEREFORE, the Court hereby DENIES the debtor's Motion for Confirmation of Chapter 13 Plan.

SO ORDERED this 21st day of March, 2006.

_____
HON. PAMELA PEPPER
United States Bankruptcy Court

Cc: Tania French
Debtor

Michael J. Watton
Michael J. Maloney
Counsel for the Debtor

Mary B. Grossman
Standing Chapter 13 Trustee

Office of the U.S. Trustee